IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GRAY WATSON,

    Plaintiff,

v.

JOHN DOE and
256.com, an Internet domain name,

    Defendants.

No. 1:15-cv-831-AJT-MSN

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Gray Watson ("Mr. Watson" or "Plaintiff") by counsel, submits this Memorandum in Support of His Motion for Default Judgment transferring the Internet domain name 256.com to Plaintiff, and in support thereof states as follows:

### I. INTRODUCTION

Mr. Watson has filed a Motion with this Court under Federal Rule of Civil Procedure 55(b)(2) for a default judgment transferring to it control of the Internet domain name 256.com. There are two bases upon which the Court should transfer the 256.com domain name back to Mr. Watson after John Doe secretly, and without authority, accessed Mr. Watson's domain name management account in an effort to improperly take control of the domain name.

*First*, John Doe's registration and use of the 256.com domain name violates the Federal Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1). The 256.com domain name is identical to Mr. Watson's 256.com mark, which was distinctive at the time that

John Doe transferred the 256.com domain name away from Mr. Watson without authorization and thereby registered the 256.com domain name, and which remains distinctive today. The 256.com domain name was registered and is being maintained and used by a registrant that lacks any rights or other interest in such 256.com domain name. Moreover, the 256.com domain name was registered in bad faith and/or is being used in bad faith without permission from Mr. Watson.

*Second*, John Doe's theft of the 256.com domain name from Mr. Watson's domain name management account violated the Computer Fraud & Abuse Act ("CFAA"), 18 U.S.C. § 1030. John Doe knowingly, intentionally, and with an intent to defraud: (1) accessed Mr. Watson's domain name management account on a protected computer without authorization; (2) obtained information from the computer in a transaction involving an interstate or foreign communications; (3) use the information obtained to further a fraud or obtain something of value; and (4) caused Mr. Watson damage and loss.

By their default, John Doe and the 256.com domain name each have conceded the truth of the allegations of Mr. Watson's Complaint for cybersquatting and violation of the CFAA. There is no genuine issue of fact remaining in this suit, and default judgment should be entered against defendants providing for the transfer of the 256.com domain name back to Mr. Watson, its rightful owner.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff Gray Watson And His Trademark Rights

Mr. Watson is an individual resident of the state of Massachusetts with an address of 29 Tarbell Avenue, Lexington, MA 02421. Complaint ("Compl.") ¶ 3 (ECF No. 1). Mr. Watson registered the 256.com domain name in 1997 and, until December 16, 2014, was the named registrant of the 256.com domain name. *Id.* ¶¶ 18, 21 & Ex. B. For more than 17 years, Mr.

Watson used the 256.com domain name to provide information, commentary, free software code, his resume and CV history, and other public and private information. *Id.* ¶ 19. Mr. Watson used and promoted the domain name in a manner that made such a visual impression that viewers would view 256.com as a symbol of origin, and consumers came to identify 256.com as a source indicator. *Id.* ¶ 22. Mr. Watson used the 256.com domain name in U.S. commerce in association with the provision of services to Internet consumers and Mr. Watson is entitled to common law trademark protection in the 256.com domain name. *Id.* ¶ 23.

Mr. Watson maintained the 256.com domain name in an account with the domain name registrar eNom, Inc. *Id.* ¶ 29. Mr. Watson's domain name management account with eNom, Inc. is maintained on a protected computer. *Id.* ¶ 30. Access to Mr. Watson's account should be restricted only to those persons who possess Mr. Watson's user name and password. *Id.*

### B. John Doe's Theft and Unauthorized Transfer of the 256.com Domain Name

Defendant John Doe is a person of unknown identity located in China. *Id.* ¶ 5. Defendant 256.com is an Internet domain name previously registered to Mr. Watson, but which now, accoridng to records in the WHOIS database of domain name registrations, is improperly registered in the name of "zhuying, zhu ying, furongqufurongdajie, Changshashi, Hunan, 223311." *Id.* ¶ 4 & Ex. A. Upon information and belief, based upon research and due diligence, the name presently listed as the registrant of Defendant 256.com is a fictitious name and alias for John Doe and the address presently listed in the domain name registration records for Defendant 256.com is fictitious and does not identify an actual address within China. *Id.* ¶¶ 5-6.

On December 16, 2014, at 09:38 EST, Mr. Watson received an email notification that someone had gained unauthorized access to his domain name management account and altered the domain name registration records for the 256.com domain name so as to transfer the domain name to another account with eNom, Inc. *Id.* ¶ 31. Mr. Watson immediately contacted eNom,

Inc. technical support to notify it that the access to his account was not authorized, the changes to the 256.com domain name registration were not authorized, and the transfer of the domain name was not authorized. *Id.* ¶ 32. Mr. Watson asked eNom, Inc. technical support to lock to domain to halt the transfer of the 256.com domain name until the matter could be further investigated. *Id.* However, at 10:38 EST, before eNom, Inc. could act upon Mr. Watson's request, the registration records for 256.com had changed indicating that the domain name had been transferred from eNom, Inc. to a domain name registrar based in China—eName Technology Co., Ltd—and to an account with this registrar owned by John Doe. *Id.* ¶ 33. Based on Mr. Watson's rightful ownership of the domain name, eNom, Inc. attempted to retrieve the domain name, but the Chinese domain name registrar refused to return the domain name. *Id.* ¶ 36.

The registration and use of the 256.com domain name by John Doe is without authorization from Mr. Watson. *Id.* ¶ 37.

### C. The Instant Proceeding

Plaintiff filed this action against Defendants John Doe and Internet domain name 256.com on June 29, 2015. *See* ECF No. 1. The Complaint seeks the transfer of the 256.com domain name back Mr. Watson for violation of the ACPA and the CFAA.

On July 10, 2015, Mr. Watson provided the registered owner of the 256.com domain name with notice of the alleged violations and a copy of the Complaint. *See* Declaration of David E. Weslow ("Second Weslow Decl.") ¶ 3 (ECF No. 13-1). The notices were sent to the postal and e-mail addresses provided in the domain name registration records for the 256.com domain name. *Id.* ¶ 4 & Attach. 1.

On August 26, 2015, Mr. Watson filed a Motion for Service By Publication. *See* ECF Nos. 7-8. On August 28, 2015, the Court granted Mr. Watson's Motion and ordered Mr. Watson to publish the Order providing notice to the 256.com domain name in *The Washington Times*

once within fourteen (14) days after the entry of the Order.  *See* ECF No. 9.  The Order further directed Mr. Watson to file a declaration within twenty (20) days after the entry of the Order describing the steps that Mr. Watson had taken to comply with the Order.  *Id.*

Mr. Watson caused the Order of Service By Publication to be published in *The Washington Times* on September 2, 2015.  *See* First Declaration of David E. Weslow (ECF No. 10-1) ("First Weslow Decl.").  Mr. Watson filed his declaration describing compliance with the Order on September 14, 2015.  *Id.*  On October 14, 2015, the Clerk entered a default against the 256.com domain name.  (*See* ECF No. 14).

### III. ARGUMENT

#### A. This Court Has Jurisdiction to Enter Default Judgment Against John Doe and the 256.com Domain Name.

The Court has jurisdiction to grant Mr. Watson's motion and enter default judgment against the 256.com domain name because the Court has subject matter jurisdiction over this action as well as *in rem* jurisdiction over the 256.com domain name.  The Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121(a) (all federal trademark actions), 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (any act of Congress relating to patents, copyrights, and trademarks).  *See* Compl. ¶ 9.

This Court has *in rem* jurisdiction over the 256.com domain name pursuant to 15 U.S.C. § 1125(d)(2)(A)(i)(I) because Mr. Watson cannot through due diligence find a specifically identifiable person who would have been a defendant in this action.  *See id.* ¶¶ 7, 10.  *In rem* jurisdiction and venue are proper in this district: (1) pursuant to 15 U.S.C. § 1125(d)(2)(C) because the top-level domain registry operator for .COM domain names, VeriSign, Inc., is situated in this judicial district, and the Defendant Internet domain name 256.com is a .COM domain name; (2) pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events

giving rise to the claims occurred in this district; and (3) pursuant to 28 U.S.C. § 1391(b)(3) because John Doe is subject to this Court's personal jurisdiction. *See id.* ¶ 15.

Defendant John Doe and Defendant 256.com are properly joined because the claims set forth herein arise out of the same series of transactions and the same questions of law are common to each of the Defendants. *Id.* ¶ 16; Fed. R. Civ. P. 20(a)(2).

### B. The Clerk Appropriately Entered Defaults as to the 256.com Domain Name.

The Clerk of this Court enters a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Clerk's entry of default against Defendants John Doe and the 256.com domain name was required here because, as the docket reflects, the time for filing a responsive pleading had passed.

On August 26, 2015, Mr. Watson filed a Motion for Service By Publication. *See* ECF Nos. 7-8. On August 28, 2015, the Court granted Mr. Watson's Motion and ordered Mr. Watson to publish the Order providing notice to the 256.com domain name in *The Washington Times* once within fourteen (14) days after the entry of the Order. *See* ECF No. 9. The Order further directed Mr. Watson to file a declaration within twenty (20) days after the entry of the Order describing the steps that Mr. Watson had taken to comply with the Order. *Id.*

Mr. Watson caused the Order of Service By Publication to be published in *The Washington Times* on September 2, 2015. *See* First Weslow Decl. Mr. Watson filed his declaration describing compliance with the Order on September 14, 2015. *Id.* The Defendants did not request, and the Court did not grant, any formal extension of the deadlines prescribed in the August 28, 2015 Order, and Defendants John Doe and the Internet domain name 256.com failed to answer or otherwise respond to Plaintiff's Complaint.

These facts, supported by the uncontroverted declarations filed in this action, clearly demonstrate that the Defendants John Doe and the Internet domain name 256.com (and anyone acting on their behalf) had constructive notice (if not actual notice) of this suit yet failed to enter an appearance or otherwise defend this action. Therefore, the Clerk appropriately entered default as to the Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

## C. Plaintiff is Entitled to a Default Judgment Against Defendants.

By failing to appear or otherwise defend against the Complaint, Defendants are deemed to have admitted every allegation therein, and the Court must only determine whether the Complaint properly states a claim for relief. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). This Court should conclude that Defendants have admitted the well-pled allegations set forth in Plaintiff's Complaint that establish Plaintiff's entitlement to a transfer of the 256.com domain name. *See Agri-Supply Company, Inc. v. Agrisupply.com*, 457 F. Supp. 2d 660, 664 (E.D. Va. 2006).

### 1. The Theft of Mr. Watson's 256.com Domain Name Violated the ACPA.

The ACPA provides that a person is liable to a trademark owner if that person has a bad faith intent to profit from the trademark owner's mark and the person registers, traffics in, or uses a domain name that is identical or confusingly similar to or dilutive of that mark. 15 U.S.C. § 1125(D)(1)(a); *see also Central Source LLC v. annualdcreditreport.com*, No. 14-CV-304, 2014 WL 371162 (E.D. Va. Aug. 1, 2014) at * 6 (citing *People for the Ethical Treatment of Animals v. Doughnet*, 263 F.3d 359, 367 (4th Cir. 2001)); *Agri-Supply Co.*, 457 F. Supp. 2d at 662-63. The Complaint pleads both that the 256.com domain name is identical to Mr. Watson's distinctive 256.com mark and that the registration of the 256.com domain name was in bad faith. *See* Compl. ¶ 45.

a. The 256.com Mark.

The 256.com mark is now distinctive and was distinctive at the time that John Doe transferred the 256.com domain name away from Mr. Watson without authorization and thereby registered the Defendant domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(IX). For more than 17 years, Mr. Watson used the 256.com domain name as his "digital home" on the Internet to provide information, commentary, free software code, his resume and CV history, and other public and private information. Compl. ¶¶ 19-20. Mr. Watson used and promoted the domain name in a manner that made such a visual impression that viewers would view 256.com as a symbol of origin, and consumers came to identify 256.com as a source indicator. *Id.* ¶ 22. Mr. Watson used the 256.com domain name in U.S. commerce in association with the provision of services to Internet consumers. *Id.* ¶ 23; *Acme Billing Co. v. Doe*, No. 1:14-CV-1379, 2015 WL 2401429, at *2 (E.D. Va. May 18, 2015) (recognizing plaintiff's right to protection of three and four number domain names).

Mr. Watson continuously and exclusively used the 256.com domain name in U.S. commerce in association with the provision of products and services to Internet consumers and thus is entitled to common law trademark rights in the Domain Names. "At common law, trademark ownership is acquired by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). The use of a trademark in a domain name is sufficient to create common law trademark rights if the trademark "is used to identify the source of goods and services." *See Tober v. APROV.COM*, No. 1:07-CV-1252 LMB/TCB, 2008 WL 4364221, at *2 (E.D. Va. Sept. 23, 2008). Here, Mr. Watson used the 256.com domain name as more than an Internet address; rather, Mr. Watson used and promoted the 256.com domain name in a manner that made such a visual impression that consumers would view the 256.com domain name as a symbol of origin, and consumers came to identify the

256.com domain name as a source indicator. (Compl. ¶¶ 22-23). This Court has found that continuous use of a domain name in the promotion of a business is sufficient to establish common law rights in a trademark. *See Acme Billing*, 2015 WL 2401429 at *4; *Lee v. Kremnev*, No. 1:14-CV-418 JCC/TRJ, 2014 WL 7345986, at *7 (E.D. Va. Dec. 2, 2014); *Seitzman v. Lead Networks Domains Pvt., Ltd.*, 1:09-CV-01141 CMH/IDD, 2010 WL 4481776, at *6-7 (E.D. Va. Sept. 24, 2010). Accordingly, Mr. Watson is entitled to common law trademark rights in the 256.com domain name.

      b. <u>The Domain Name is Identical to Mr. Watson's 256.com Mark.</u>

The 256.com domain name is confusingly similar to Mr. Watson's 256.com mark pursuant to 15 U.S.C. §§ 1125(d)(1)(A)(ii)(I). Under the ACPA, courts look to the facial similarity of the domains to the marks to determine confusing similarity. *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004) ("It is the challenged domain name and the plaintiff's mark which are to be compared."). The confusing similarity standard is satisfied when a domain name is virtually identical to the plaintiff's mark. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 663 (E.D. Va. 2006).

Here, however, John Doe transferred control of the 256.com domain name away from Mr. Watson without authorization, so the 256.com domain name is identical to Mr. Watson's trademark. *See* Compl. ¶¶ 42, 45. Thus, it is clear that the 256.com domain name is confusingly similar to Mr. Watson's trademark, because it is identical to Mr. Watson's trademark. Further, it is clear that the registrants possess a bad-faith intent to profit from the similarity of the 256.com domain name to Mr. Watson's trademark, as discussed below.

      c. <u>John Doe's Bad Faith</u>

The ACPA lists several non-determinative factors that a court may consider when determining bad faith, including a defendant's intellectual property rights in the domain name;

the extent to which the name consists of the defendant's legal name; a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark; and a defendant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I), (II), (IV), (V), (VII). "The factors are given to courts as a guide" and need not be exhaustively considered in every case. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).

Here, the facts support a finding of bad faith by John Doe. John Doe has no intellectual property rights in the 256.com domain name, which is identical to Mr. Watson's 256.com mark. *See* Compl. ¶ 38; 15 U.S.C. §§ 1125(d)(1)(B)(i)(I). Given Mr. Watson's long history as the registrant of the 256.com domain name and the operator of the associated website, and the nature of the domain name, the 256.com domain name does not appear to reflect the legal name of John Doe. Compl. ¶ 47; 15 U.S.C. §§ 1125(d)(1)(B)(i)(II). On July 10, 2015, Mr. Watson provided the registered owner of the 256.com domain name with notice of the alleged violations and a copy of the Complaint. *See* Second Weslow Decl. ¶ 3. The notices were sent to the postal and e-mail addresses provided in the domain name registration records for the 256.com domain name. *Id.* ¶ 4 & Attach. 1. Nevertheless, no one has filed a response to the Complaint on behalf of the 256.com domain name.

John Doe has not engaged in bona fide noncommercial or fair use of the 256.com mark in a site accessible under the 256.com domain name. Compl. ¶ 40; 15 U.S.C. §§ 1125(d)(1)(B)(i)(IV).

Finally, John Doe also supplied false contact information when registering the 256.com domain name, thus further demonstrating a bad faith intent to profit from Plaintiff's 256.com.

Compl. ¶ 41; 15 U.S.C. §§ 1125(d)(1)(B)(i)(VII); *see Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Estrangers A Monaco*, 192 F. Supp. 2d 467, 486-87 (E.D. Va. 2002) (finding that use of aliases "creates an atmosphere of deception" that supports finding of bad faith); *Montblanc-Simplo GmbH v. AChatStyloMontblanc.com*, No. 1:13-CV-1013, 2014 WL 107395, at *5 (E.D. Va. Jan. 3, 2014) (finding bad faith where true identity and correct service address have not been provided).

This court recently found bad faith under the ACPA in other domain name theft cases. *Lee*, 2014 WL 7345986 at *9; *Acme Billing Co.*, 2015 WL 2401429 at *4. In *Lee*, the plaintiff's domain name account was compromised, and his domain name was stolen. The court held that plaintiff had sufficiently alleged bad faith under the ACPA on the part of the registrant because the registrant had "fail[ed] to correct the fraudulent transfer," the "Registrant lacked any right or legitimate interest in plaintiff's mark or domain name at the time of transfer," and the "Registrant's transfer of the domain name ha[d] prevented plaintiff from using and exercising control over his mark." *Id.* at 8-9. Similarly, here, John Doe lacked any legitimate right or interest in the 256.com domain name when it transferred the 256.com domain name from Mr. Watson, it has failed to correct the fraudulent transfer, and it has prevented Mr. Watson from exercising control over the domain name.

For all of these reasons, the pleaded facts support a finding of bad-faith registration of the 256.com domain name.

### 2. The Theft of Mr. Watson's 256.com Domain Name Violated the CFAA.

The CFAA provides for civil liability relating to the knowing or intentional access of a computer without authorization. 18 U.S.C. § 1030(g); *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 201 (4th Cir. 2012). Specifically, the CFAA penalizes a party that

intentionally accesses a protected computer without authorization and thereby obtains information from a protected computer (18 U.S.C. § 1030(a)(2)(C)); knowingly and with an intent to defraud accesses a protected computer without authorization and thereby obtains anything of value which furthers the intended fraud (18 U.S.C. § 1030(a)(4)); or intentionally accesses a protected computer without authorization, and, as a result of such conduct, causes damage and loss (18 U.S.C. § 1030(a)(5)(C)).

Here, the pleaded facts support a finding that John Doe violated the CFAA. Mr. Watson's domain name management account was maintained on a protected computer within the meaning of the CFAA. Compl. ¶ 30; 18 U.S.C. § 1030(e)(2)(B) (defining "protected computer" as a computer "which is used in or affecting interstate or foreign commerce or communication"); *see also Consumer Source Holding, Inc. v. Does 1-24*, No. 1:13-CV-1512 AJT/JFA, 2014 WL 2967942, at *7 (E.D. Va. July 1, 2014). John Doe knowingly and intentionally accessed Mr. Watson's domain name management account on a protected computer without authorization and thereby obtained information from the protected computer in a transaction involving an interstate or foreign communication. Compl. ¶¶ 31, 50; 18 U.S.C. § 1030(a)(2)(C). Further, John Doe knowingly and with an intent to defraud accessed Mr. Watson's domain name management account on a protected computer without authorization and obtained information from the computer, which John Doe used to further a fraud and obtain something of value. Compl. ¶¶ 31, 50; 18 U.S.C. § 1030(a)(4). Finally, John Doe intentionally accessed Mr. Watson's domain name management account on a protected computer without authorization, and, as a result of such conduct, caused damage and loss. Compl. ¶¶ 51; 18 U.S.C. § 1030(a)(5)(C).

This Court recently held in a similar case that "hijacking plaintiff's domain name accounts" constitutes a violation of the CFAA. *Consumer Source Holding, Inc.*, 2014 WL

2967942, at *7-8. The facts of *Consumer Source Holding* are analogous to the present case. In that case, the Doe defendants, who were believed to reside in China, operated under aliases and unlawfully transferred control of plaintiff's domain names away from the plaintiff. The court found that defendants' conduct had resulted in harm to plaintiff:

> As a result, the ownership and contact information associated with plaintiff's brands and websites have been misrepresented, plaintiff's customer information has been put at risk, plaintiff has lost control over its websites and their functionality, spent resources investigating defendants' unauthorized access, and suffered damage to its brands, goodwill, and reputation.

*Id*. Thus, the court concluded that defendants had violated the CFAA.

Likewise, here, John Doe intentionally and without authorization accessed Mr. Watson's domain name management account and transferred control of the Domain Names away from Mr. Watson. Moreover, as a result of John Doe's unauthorized conduct, Mr. Watson's control of his own website has been disabled, and Mr. Watson has suffered damage to his goodwill and reputation. Thus, the facts of this case support a finding that John Doe violated the CFAA.

Computer hacking and theft of intellectual property by persons based in China has become a significant problem for American businesses. (Compl. ¶ 25). Recently, domain name theft in particular is threatening businesses. (*Id*. ¶ 27). The present case, *Acme Billing Co.*, and *Consumer Source Holding* are just three examples of this ever-growing problem. Holding hackers like John Doe accountable for their unlawful conduct under the CFAA is an important method of deterring further domain name theft.

### D.     The 256.com Domain Name Should Be Transferred to Mr. Watson.

The ACPA provides that the remedy for an *in rem* proceeding is either the forfeiture or cancellation of the domain names or the transfer of the domain name(s) to the owner of the mark. 15 U.S.C. § 1125(d)(2)(D)(i). Moreover, a plaintiff in a civil action under the CFAA may seek injunctive or other equitable relief. *See* 18 U.S.C. § 1030(g). The domain name registry for

Defendant 256.com domain name is maintained by VeriSign, which is located within this judicial district and thus subject to the Court's jurisdiction. Accordingly, the Court may properly enter a default judgment and order the .com domain name registry and any relevant domain name registrar to transfer ownership of the 256.com domain name to Plaintiff. *See, e.g.*, *Acme Billing Co.*, 2015 WL 2401429 at *5; *Central Source LLC*, 2014 WL 371162, at *8; *America Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449, 453-55 (E.D. Va. 2003).

## IV. CONCLUSION

For the foregoing reasons, Mr. Watson respectfully requests that the Court grant this Motion for Default Judgment and order that VeriSign, Inc., the operator of the .COM registry, change the registrar of record for the 256.com domain name to Plaintiff's registrar of choice, eNom, Inc., and further order that eNom, Inc. take the necessary steps to have plaintiff Gray Watson listed as the registrant for the 256.com domain name.

Dated: November 19, 2015   By:      /s/ Attison L. Barnes, III /s/
                                                                           Attison L. Barnes, III (VA Bar No. 30458)
                                                                           David E. Weslow (admitted *pro hac vice*)
                                                                            WILEY REIN LLP
                                                                            1776 K St. NW
                                                                            Washington, DC 20006
                                                                            (202) 719-7000 (phone)
                                                                            (202) 719-7049 (fax)
                                                                            abarnes@wileyrein.com
                                                                            dweslow@wileyrein.com

                                                                            *Counsel for Plaintiff*
                                                                            *Gray Watson*

# **CERTIFICATE OF SERVICE**

  I, Attison L. Barnes, III, hereby certify that on November 19, 2015, I electronically filed the foregoing by using the CM/ECF system. I also sent copies to the postal and email addresses provided in the domain name registration record for the 256.com domain name:

  zhu ying
  furongqufurongdajie, Changshashi Hunan 223311 CN

  niubbb7878@gmail.com

             /s/ Attison L. Barnes, III
             Attison L. Barnes, III, Esq.
             WILEY REIN LLP
             1776 K Street, NW
             Washington, DC 20006
             Tel: (202) 719-7000
             Fax: (202) 719-7049
             abarnes@wileyrein.com

             *Counsel for Gray Watson*